Opinion filed December 15,
2011

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00202-CR 

                                                    __________

 

 

CHARLES EDWARD TRAYLOR
A/K/A CHARLES EDWARD CRAIN, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 42nd District Court

                                                            Taylor
County, Texas

                                                    Trial
Court Cause No. 23688A 

 



 

                                            M
E M O R A N D U M   O P I N I O N

            The
jury convicted Charles Edward Traylor a/k/a Charles Edward Crain of possession
of cocaine in the amount of four grams or more but less than 200 grams. 
Appellant pleaded true to two enhancement allegations.  The trial court found
the enhancement allegations to be true and assessed appellant’s punishment at
twenty-five years confinement.  We affirm.

Issues
Presented

            Appellant
presents seven points of error.  In his first three points, appellant
challenges the legal and factual sufficiency of the evidence to support his
conviction.  Specifically, in his first point, appellant contends that the
State failed to establish the reliability of testimony by an expert witness
that the substance was cocaine.  Therefore, appellant asserts that the evidence
was legally insufficient to prove that the seized substance was cocaine.  In
his second and third points, appellant contends that the evidence was legally
and factually insufficient to prove that he intentionally or knowingly
possessed cocaine because the evidence was insufficient to link him to the
suspected cocaine.  In his fourth point, appellant contends that the State violated
his due process rights because police officers gave perjured testimony and
tampered with the physical evidence to obtain the conviction.  Consequently,
appellant asserts that his conviction should be vacated under the Due Process
Clause of the United States Constitution.  In his fifth through seventh points,
appellant contends that his trial counsel rendered ineffective assistance of
counsel by failing to file a motion to suppress the evidence, failing to object
to the prosecutor’s comments about his post-arrest silence, and failing to
object to the admissibility of the cocaine on the ground that the State did not
sufficiently establish the chain of custody.

Sufficiency
of the Evidence

            We
will review appellant’s challenges to the sufficiency of the evidence under the
currently applicable legal sufficiency standard of review.  See Brooks v.
State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).  The standard of review
for an appellate court in evaluating the legal sufficiency of the evidence is
to determine whether any rational finder of fact could have found the existence
of the elements of the offense after viewing all of the evidence in a light
most favorable to the verdict.  Jackson v. Virginia, 443 U.S. 307, 319 (1979). 
The appellate court’s duty is not to sit as a thirteenth juror reweighing the
evidence or deciding whether it believes the evidence established the elements
in question beyond a reasonable doubt.  Blankenship v. State, 780 S.W.2d
198, 206–07 (Tex. Crim. App. 1988).  The sufficiency test must be applied to
the application paragraph in a hypothetically correct jury charge.  Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).            

            In a
prosecution for possession of a controlled substance, the State must prove that
the accused exercised care, custody, control, or management over the substance
and that the accused knew the substance was contraband.  Tex. Health & Safety Code Ann. § 481.002(38)
(West 2010); Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006);
Martin v. State, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988).  The State
does not have to prove that the accused had exclusive possession of the
contraband; joint possession is sufficient to sustain a conviction.  Cude v.
State, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986).  When the accused is not
shown to have had exclusive possession of the place where the contraband was
found, the evidence must link the accused to the contraband and establish that
the accused’s connection with the drug was more than fortuitous.  Evans,
202 S.W.3d at 161–62; Pollan v. State, 612 S.W.2d 594, 596 (Tex. Crim.
App. 1981).  Courts have recognized a number of factors that may link an
accused to the drug.  Evans, 202 S.W.3d at 162 n.12.  The legal issue
with respect to such “links” is “whether there was evidence of circumstances,
in addition to mere presence, that would adequately justify the conclusion that
the defendant knowingly possessed the substance.”  Evans, 202 S.W.3d at
161–62 & n.9.  No set formula exists to dictate a finding of links
sufficient to support an inference of knowing possession of contraband.  Isbell
v. State, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.); Taylor
v. State, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).  It is not
the number of links that is dispositive, but rather the logical force of all
the evidence, direct and circumstantial.  Evans, 202 S.W.3d at 162.

            The
record shows that, on October 17, 2008, at about 11:40 p.m., Abilene police
officers received a call regarding a problem in the area of South First Street
and the Winters Freeway.  Sergeant Jimmy Smith testified that he drove to the
scene but did not see anything at that location.  Sergeant Smith looked across
the railroad tracks and saw a vehicle under the overpass at North First Street
and the Winters Freeway.  Sergeant Smith relayed information about this
location over the police radio, and he drove to the scene.  He said that the
vehicle, which was a Suburban, was facing east and that he was driving west.  As
Sergeant Smith passed the vehicle, he noticed a pile of debris on the ground in
the vicinity of the back passenger door on the driver’s side of the vehicle.  Sergeant
Smith testified that he did not see anything under the driver’s door of the
vehicle.  Sergeant Smith made a U-turn and then stopped behind the Suburban.  At
that time, Officers Chris Lazirko and Michael Rafferty arrived at the scene in a
patrol car. Officer Rafferty parked the patrol car behind Sergeant Smith’s
vehicle. Officer Rafferty turned on his overhead lights for safety
reasons.  The video camera in the patrol car activated when Officer Rafferty
turned on the lights.  A copy of the videotape of the incident was admitted
into evidence as State’s Exhibit No. 1 and played for the jury.  We have reviewed
State’s Exhibit No. 1, and it is consistent with the officers’ testimony.

When
the officers arrived, a man was sitting in the driver’s seat of the Suburban.  Officer Rafferty
approached the Suburban and talked to the man, whom the officers identified as
appellant.  Officer Lazirko looked through a window on the passenger’s side of
the Suburban. He saw that no one other than appellant was in the vehicle.  Officer
Lazirko walked around to the driver’s side of the vehicle.  The vehicle had a
flat tire.  Appellant told Officer Rafferty that the Suburban belonged to a
friend of his who was in jail.  Appellant said that he had gotten the vehicle
out of impound that day and was using it while his friend was in jail.  Appellant
also told Officer Rafferty that he had clipped the curb and flattened the tire
while trying to take his girlfriend, Shirley Lee, and a male passenger, Dee McClain,
to the house in the 5300 block of Laguna where appellant and Lee lived.  The
officers noticed a foul smell in the area.  Appellant told Officer Rafferty
that McClain had kidney problems and had defecated in the backseat of the vehicle. 
Appellant said that he had cleaned up the mess with towels and had tossed them
into the street.

Officer
Rafferty testified that he saw a plastic bag on the ground near the driver’s
door as he walked up to talk to appellant.  Officer Rafferty said that the bag
was “kind of rolled up next to the door area” and that it was “[r]ight at the
edge of the driver’s side door because [he] was practically stepping on it as
[he] was speaking with [appellant].”  Officer Rafferty believed that the bag
had come from inside the Suburban.  He said that appellant would have run over
the bag had it been there before he arrived at the scene.  Officer Rafferty
said that the bag had not been run over.  Officer Rafferty also saw some towels
on the ground near the rear tire on the driver’s side of the vehicle.

Officer
Lazirko testified that, “[o]n the driver’s side just below the driver’s door[,
he] noticed there was a, looked like a white plastic shopping bag that was
rolled up and laying on the ground just underneath the driver’s door.”  Officer
Lazirko said that the bag was “in line with the front left tire” of the
vehicle.  He testified that appellant would have run over the bag had it been
there before appellant arrived at the location.  Officer Lazirko said that the
white bag was “not even a few feet” away from appellant.  Officer Lazirko
believed that the bag had just been dropped out of the vehicle.

            For
safety reasons, Officer Lazirko did not want to bend down between Officer
Rafferty and appellant to get the white bag.  Therefore, he told Officer
Rafferty to kick the bag to him, and Officer Rafferty did so.  The bag ended up
by the back tire on the driver’s side of the vehicle.  Officer Lazirko went to
the patrol car to get a pair of latex gloves.  Sergeant Smith moved his vehicle
so that Officer Lazirko could move the patrol car directly behind appellant’s vehicle.
 The move of the vehicles is depicted on the videotape.  When Officer Lazirko
moved the patrol car directly behind the Suburban, the white bag came into view
of the video camera. The videotape shows the bag near the back tire on the
driver’s side of the vehicle.

Officer
Lazirko picked up the bag and opened it.  He testified that it was a white
Wal-Mart shopping bag.  Officer Lazirko found two clear plastic baggies inside
the Wal-Mart bag.  He said that these baggies contained “two large rocks of
[an] off[-]white substance which [he] recognized to be crack cocaine.”  Officer
Lazirko testified that the rocks were wet and had the consistency of dough or
play dough, which meant that they had been made recently.  He said that the
rocks would have been harder after they dried.  He said that the rocks were not
smashed and, therefore, had not been run over.           

Sergeant
Smith performed a preliminary field test of the rocks.  With their wet
consistency, the rocks weighed a total of fifty-two grams.  During the field
test, the substance tested positive for crack cocaine.  Appellant told Officer
Rafferty that the substance did not belong to him.  The officers placed
appellant under arrest.  Officer Lazirko searched the Suburban.  He testified
that he found a usable amount of marihuana in the center console of the
vehicle.  Officer Lazirko did not find drug paraphernalia or cash in the
vehicle.

Officer
Lazirko placed the cocaine into two heat-sealed envelopes and then booked it
into evidence at the Law Enforcement Center.  Officer Lazirko testified that
the cocaine remained there until it was taken to the Texas Department of Public
Safety Crime Laboratory for testing. Officer Lazirko testified that State’s
Exhibit No. 2 was the subject Wal-Mart bag and that State’s Exhibit No. 3 was
the crack cocaine that was in the Wal-Mart bag.

            Abilene
Police Special Operations Agent Chad Jenkins testified that, on December 3,
2008, he took the evidence in this case to the DPS crime lab for testing. 
Agent Jenkins said that the street value of cocaine is about $100 a gram.

On
December 17, 2008, Herman Carroll, a forensic scientist with the DPS crime lab
in Abilene, analyzed the substance identified as State’s Exhibit No. 3.  Carroll,
who is a chemist, testified about the procedure that was followed at the DPS
crime lab in Abilene for testing substances.  DPS analysts first perform a
preliminary examination of a substance using a color test.  If the color test
yields a positive result, the analysts then perform a confirmational
examination of the substance, usually using a gas chromatograph mass
spectrometer (GCMS).  Carroll followed this procedure in this case.

Carroll
recognized State’s Exhibit No. 3 as a substance he had analyzed because its
packaging contained his initials, a date, and a case number that was unique to
the Abilene DPS crime lab.  Carroll said that, before he tested the evidence,
it was contained in two separate plastic baggies.  Carroll performed separate color
tests on the substances from both bags.  He said that the substances from both
bags tested positive for cocaine.  Carroll testified that, because both
substances tested positive and looked the same, he made a combination sample of
the substances and then performed a GCMS analysis of the combination substance. 
The GCMS analysis showed that the substance contained base-form cocaine.  Based
on his analysis, Carroll concluded that State’s Exhibit No. 3 contained base-form
cocaine and weighed 19.31 grams.  Carroll testified that the base form of
cocaine is also known as crack cocaine.

            Shirley
Lee testified that appellant was her boyfriend.  She said that, on the night
that appellant was arrested in this case, appellant had picked her up at 5210
Congress Street between 10:30 and 11:30 p.m.  Lee said that McClain was in the
backseat of the vehicle when appellant picked her up.  She said that appellant
and McClain were both drunk.  She also said that McClain had had a bowel
movement in the backseat.  Lee testified that she got mad at appellant because
he was driving erratically and that she and appellant started yelling at each
other.  Lee said that, when appellant turned the “corner” of North First Street
and North Clack Street, “he took off real fast, he started fishtailing[,] and
he hit the curb.”  Lee said that one of the vehicle’s tires blew out during the
incident.  She testified that, after the vehicle came to a stop, she got out
and walked to her house on Laguna Street.  There was no evidence as to when
McClain left the scene. 

            In
his first point, appellant contends that the State failed to establish the
reliability of Carroll’s testimony that the seized substance was cocaine
because “no testimony was adduced at trial that [Carroll’s] method of testing
the suspected cocaine was reliable or that the testing method used, if
reliable, was properly performed in [appellant’s] case.”  Based on the alleged
lack of reliability of Carroll’s testimony, appellant asserts that the
testimony amounted to no evidence that the substance was cocaine.  Therefore,
appellant argues that the evidence was legally insufficient to prove that he
possessed cocaine.

            As a
prerequisite to presenting a complaint for appellate review, an appellant must
show that he timely presented a specific objection to proffered evidence and
that the trial court ruled on the objection or refused to rule.  Tex. R. App. P. 33.1(a); Hernandez
v. State, 53 S.W.3d 742, 745 (Tex. App.—Houston [1st Dist.] 2001, pet.
ref’d). Appellant did not object to the qualifications or testimony of
Carroll.  Accordingly, appellant has not preserved any complaint as to the
admissibility of Carroll’s testimony for appellate review.  Carroll testified
that the substance contained base-form cocaine and weighed 19.31 grams.  Expert
testimony by a chemist is often used in possession-of-controlled-substance
cases to prove the nature of the controlled substance.[1] 
This type of testimony has been found to be reliable.  Williams, 936
S.W.2d at 404.  We conclude that Carroll’s unchallenged expert testimony is sufficient
to establish that the seized substance was cocaine.  We note that the State likely
would have been able to overcome an objection to the reliability of Carroll’s
testimony had appellant lodged such an objection at trial.  Additionally,
Carroll’s testimony was not the only evidence that the seized substance was
cocaine.  Officer Lazirko testified that he recognized the “two large rocks” to
be crack cocaine.  During the field test performed by Sergeant Smith, the
substance tested positive for cocaine.  We hold that the evidence is sufficient
to establish that the seized substance contained cocaine.  Appellant’s first point
is overruled.

            In
his second and third points, appellant contends that the officers gave false
testimony in an effort to link him to the cocaine.  Specifically, appellant
contends that Officers Lazirko and Rafferty committed perjury by testifying
that they found the cocaine in close proximity to him under the driver’s side door. 
Appellant asserts that the alleged perjured testimony of the officers
conflicted with the videotape of the incident, which depicted the white bag
near the rear tire. Appellant states in his brief that “[c]ommon sense indicates
that this account of events related by both officers was fabricated by the
officers in order to create a sufficient evidentiary link between [appellant]
and the suspected cocaine he was charged with possessing.”  Appellant also
states that “the testimony of both officers is not credible whatsoever.”  Based
on the claimed lack of credible evidence linking him to the cocaine, appellant
contends that the evidence is insufficient to establish that he intentionally or
knowingly possessed crack cocaine.

            We
have summarized the evidence above, and we hold that the evidence is sufficient
to support the jury’s verdict.  If believed, the officers’ testimony
established that appellant was alone and in the driver’s seat of the Suburban
when they arrived at the scene, that the officers found the cocaine under the
driver’s side door in very close proximity to appellant, and that appellant
would have run over the Wal-Mart bag containing the cocaine if it had been on
the ground before he arrived at the scene.  Officer Lazirko also found
marihuana in the center console of the Suburban.  The videotape of the incident
was played for the jury.  As the trier of fact, the jury was the sole judge of
the credibility of the witnesses and of the weight to be given to their
testimony.  Tex. Code Crim. Proc. Ann.
art. 36.13 (West 2007), art. 38.04 (West 1979).  The jury had the
responsibility to resolve conflicts in the testimony, to weigh the evidence, and
to draw reasonable inferences from basic facts to ultimate facts.  Jackson,
443 U.S. at 319; Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App.
2007).  The jury was free to believe or disbelieve all or any part of any
witness’s testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.
App. 1986).  Thus, the jury was free to believe the officers’ testimony.  Id. 
An appellate court may not reevaluate the weight and credibility of the
record evidence and thereby substitute its judgment for that of the jury.  Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  As demonstrated by
its verdict, the jury believed the officers.  The evidence sufficiently linked
appellant to the cocaine to establish that he intentionally and knowingly
possessed it.

            Officer
Lazirko explained that Officer Rafferty kicked the white bag to him before he
moved his patrol car directly behind the Suburban.  This testimony provided a
reasonable explanation as to why the bag was not under the driver’s side door
when it was first depicted on the videotape.  As noted above, we have reviewed
the videotape, and it is consistent with the officers’ testimony.  The evidence
also provided a reasonable explanation as to why the cocaine weighed fifty-two
grams when Sergeant Smith field-tested it and about nineteen grams when Carroll
analyzed it.  Officer Lazirko testified that the cocaine was wet when he found
it.  The cocaine would have dried and, therefore, weighed much less by the time
that Carroll analyzed it.  

            Based
on the evidence linking appellant to the cocaine, a rational jury could have
found beyond a reasonable doubt that appellant intentionally or knowingly
possessed the cocaine. Appellant’s second and third points are overruled.             

Due
Process Issue

            In
his fourth point, appellant claims that his due process rights were violated
because his conviction resulted from false evidence.  A prosecutor’s knowing
use of perjured testimony violates the Due Process Clause of the Fourteenth
Amendment to the United States Constitution.  Pyle v. Kansas, 317 U.S.
213, 215–16 (1942); Mooney v. Holohan, 294 U.S. 103, 112 (1935); Ex
parte Castellano, 863 S.W.2d 476, 479–80 (Tex. Crim. App. 1993).  However,
we have reviewed all the evidence, and nothing in the record supports appellant’s
contentions that the officers gave false testimony and tampered with the
evidence.  Appellant did not present any evidence to the trial court to support
such a claim.  The record does not demonstrate that appellant’s due process rights
were violated.  Appellant’s fourth point is overruled.                

Ineffective
Assistance of Counsel

            In
his fifth, sixth, and seventh points, appellant contends that he received
ineffective assistance of trial counsel.  To determine whether appellant’s trial
counsel rendered ineffective assistance, we must first determine whether
appellant has shown that counsel’s representation fell below an objective
standard of reasonableness and, if so, then determine whether there is a
reasonable probability that the result would have been different but for
counsel’s errors.  Wiggins v. Smith, 539 U.S. 510 (2003); Strickland
v. Washington, 466 U.S. 668 (1984); Andrews v. State, 159
S.W.3d 98 (Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d 808 (Tex.
Crim. App. 1999).  We must indulge a strong presumption that counsel’s conduct
fell within the wide range of reasonable professional assistance, and appellant
must overcome the presumption that, under the circumstances, the challenged
action might be considered sound trial strategy.  Strickland, 466 U.S.
at 689; Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). 
“[C]ounsel is strongly presumed to have rendered adequate assistance and made
all significant decisions in the exercise of reasonable professional judgment.” 
Strickland, 466 U.S. at 690.

            An
allegation of ineffective assistance must be firmly founded in the record, and
the record must affirmatively demonstrate the alleged ineffectiveness.  Thompson,
9 S.W.3d at 814.  Under normal circumstances, the record on direct appeal will
not be sufficient to show that counsel’s representation was so deficient and so
lacking as to overcome the presumption that counsel’s conduct was reasonable
and professional.  Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002).  Rarely will the record on direct appeal contain sufficient information
to permit a reviewing court to fairly evaluate the merits of such a serious
allegation.  Id.  In light of these limitations, it is well settled that
claims of ineffective assistance of counsel should usually not be raised on
direct appeal because the record is often undeveloped. Goodspeed v. State,
187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Andrews, 159 S.W.3d at 103; Thompson,
9 S.W.3d at 813–14.

            Appellant
claims that his trial counsel rendered ineffective assistance of counsel in
three respects: (1) failing to file a motion to suppress the evidence; (2)
failing to object to the prosecutor’s comments regarding his post-arrest
silence; and (3) failing to object to the admissibility of the cocaine on the
ground that the State did not sufficiently establish the chain of custody of
the cocaine. Appellant did not raise these claims in a motion for new trial.[2] 
Therefore, he did not present any evidence to the trial court in support of them. 
The record is silent as to why appellant’s trial counsel did not file a motion
to suppress, object to statements by the prosecutor that allegedly commented on
appellant’s post-arrest silence, or object to the admission of the cocaine on a
chain-of-custody ground.  The record is also silent as to the reasoning that appellant’s
trial counsel may have employed in conducting the trial.  Because the record
contains no evidence of the reasoning behind trial counsel’s actions, we cannot
conclude that counsel’s performance was deficient. Thus, appellant has failed
to overcome the presumption that his trial counsel’s conduct was reasonable and
professional.  Bone, 77 S.W.3d at 833; Green v. State, 191 S.W.3d
888, 894–95 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d) (Because the
defendant failed to present evidence rebutting the presumption that trial
counsel had plausible reasons for their actions, the court could not conclude
that their performance was deficient.).  Appellant’s fifth, sixth, and seventh points
are overruled.

This
Court’s Ruling

            The judgment of the
trial court is affirmed.

 

                                                                                    

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

December 15,
2011

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Hill, J.[3]

 









                [1]See, e.g.,
Guerrero v. State, 305 S.W.3d 546 (Tex. Crim. App. 2009) (testimony by
DPS chemist that substances contained controlled substance); Taylor v. State,
328 S.W.3d 574 (Tex. App.—Eastland 2010, pet. ref’d) (testimony by DPS chemist
from Abilene crime lab that substances contained controlled substance); Uranga
v. State, 247 S.W.3d 375 (Tex. App.—Texarkana 2008), aff’d, 330
S.W.3d 301 (Tex. Crim. App. 2010) (testimony by DPS from Abilene crime lab that
substance contained controlled substance); Graham v. State, 201 S.W.3d
323 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d) (testimony by DPS chemist
that substances contained controlled substance); Williams v. State, 936
S.W.2d 399 (Tex. App.—Fort Worth 1996, pet. ref’d) (testimony by DPS chemist
that substance contained controlled substance).  





                [2]Appellant did raise two ineffective-assistance-of-counsel
claims in a motion for new trial:  (1) that his trial counsel failed to
subpoena and call witnesses that were necessary to present an effective defense
and (2) that his trial counsel failed to adequately cross-examine the State’s
witnesses.   However, no hearing was held on the motion, and the trial court
denied it.  





 

[3]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.